## RICHE v. COE, Com'r of Patents.
### No. 1153.

District Court of the United States for the District of Columbia.

June 28, 1940.

Richard P. Schulze and Bacon & Thomas, all of Washington, D. C., and John F. McCanna and Edward A. Morsbach (of McCanna, Wintercorn and Morsbach), both of Rockford, Ill., for plaintiff.

W. W. Cochran, Sol. of Patent Office, and Jos. L. Kelly, both of Washington, D. C., for defendant.

BAILEY, Justice.

### Findings of Fact.

1. In this action, brought under the provisions of Section 4915, Revised Statutes, U.S.C., Title 35, Sec. 63, 35 U.S.C.A. § 63, plaintiff seeks to have the Court authorize the Commissioner of Patents to issue to plaintiff Arthur L. Riche a patent on his application, Ser. No. 369,592, filed June 10, 1929, containing Claims 17, 54, 55, 56, 64, 66 68, 69, 70, 71, 72 and 73, as set out in Paragraph 7 of the Complaint. At the trial Claims 17, 55, 56, 68 and 70 were withdrawn by plaintiff.

2. The plaintiff's application relates to a method and an apparatus for testing water for hardness. In plaintiff's process the water to be tested is passed through a transparent testing cell, where a sample is periodically segregated by closing a motor-operated valve. This motor is periodically set in motion by a time switch. A pump operated by the same motor forces a measured quantity of reagent (such as soap solution) into the test cell where it is mixed with the water sample contained therein. A period of time is allowed for reaction, after which a motor-actuated cam closes a switch. The closing of this switch completes an indicator circuit, including a lamp, a photo-electric cell, an amplifying tube, a relay and an ammeter. Light from the lamp passes through the sample in the testing cell and falls upon the photo-electric cell. The current through the relay is inversely responsive to the amount of light received by the photo-electric cell and this in turn is governed by the turbidity, or color, of the sample in the testing cell. This reaction affords an electrical measurement of the condition of the water sample. For example, if the water is hard, a precipitate will be formed, causing the sample in the test tube to become turbid, resulting in less light being impressed on the photo-electric cell, and thereby effecting an increase in the current in the relay. This

increase in current raises the armature to complete a signal circuit, giving an alarm or other indication. If the sample does not contain excessive hardness (Ca. and Mg. salts) the turbidity may be too slight to cause operation of the relay and alarm circuit, and no alarm will be given. For each test, however, the ammeter will indicate to the operator the condition of the sample.

3. Claims 54, 71, 72 and 73 are directed to the combination of a water softening apparatus and a testing device to be used therewith.

4. Claims 71, 72 and 73 are identical with Claims 1, 2 and 3, respectively, of the patent to Sweeney et al., No. 1,931,968.

5. Plaintiff's original specification does not make any positive statement as to how the testing device disclosed therein may be connected to a water softening apparatus.

6. Plaintiff's original specification did not make any mention of the patent to Tannehill, No. 1,713,105, nor how his testing device may be connected to the water softening apparatus disclosed by this patent.

7. None of plaintiff's original claims was directed to the combination of a water softening apparatus and a testing device to be used therewith.

8. Plaintiff's original drawings do not show a water softening apparatus.

9. Figure 6 of plaintiff's original drawings, which is a wiring diagram showing electrical apparatus for operating his testing device, does not show a connection between the testing device and a water softening apparatus.

10. The amendment to the specification, filed by plaintiff December 1, 1933 (Paper 19), contains subject matter that is not supported by the application as originally filed.

11. The two additional sheets of drawing, filed December 1, 1933, containing Figures 8 and 9, show subject matter that is not disclosed in the original application.

12. German patent to Steinmuller No. 192,467 December 13, 1907, discloses an apparatus for automatically regulating the addition of water softening chemicals (lime and soda) to hard water. A sample of water is periodically and automatically segregated in a glass testing vessel by operation of a displacement type sampler. A suitable reagent is then added to the sample. Dependent upon what reagent is added and what constituent is being tested for, a precipitate or color will be formed in the sample. Light from a lamp passes through the sample in the testing vessel and strikes a light-sensitive selenium cell the resistance of which varies with the amount of light impressed upon it. This therefore governs the current in the selenium cell circuit, which current will regulate the position of a solenoid. The position of the solenoid in turn regulates the operation of a mechanism controlling the addition of lime or other water softening chemicals.

13. German patent No. 192,467 discloses an operative apparatus for feeding water softening chemicals to hard water.

14. German patent to Steinmuller No. 192,468 December 13, 1907 discloses an improvement on German patent No. 192,467. This second German patent adds a second circuit to the selenium cell circuit of the first German patent. This second circuit operates the mechanism for controlling the addition of water softening chemicals to hard water.

15. The Muller publication, "Application of the Photo-Electric cell to Automatic Titrations" (Industrial and Engineering Chemistry, April, 1929, pp. 423–425), discloses automatic control of the titration of a sample of liquid involving a color change or precipitate. Light passes through the sample and strikes a photo-electric cell. The current changes in the photo-electric cell circuit are amplified by a thermionic vacuum tube to an extent sufficient to operate a relay, which in turn controls a buret release.

## Conclusions of Law.

1. The model constructed and operated by plaintiff was not sufficient to show that German patent No. 192,467 is inoperative.

2. The evidence offered by plaintiff to show inoperativeness of German patent No. 192,467 is not sufficient to overcome the presumption in favor of the decision of the Board of Appeals.

3. The mechanical defects in details of construction in the German patent No. 192,467 could be removed by mechanical skill, without the exercise of the faculty of invention.

4. Patent drawings are not working drawings, nor are they drawn to scale;

and a model constructed by an opponent might show a different result than that intended by the patentee.

5. The German patent No. 192,467 is a valid and effective reference against Claims 54, 64, 66 and 69.

6. It was not invention to use the modern photo-electric cell and vacuum tube amplifying circuits disclosed by the Muller publication in place of the less sensitive selenium cell and selenium cell circuits of the German patents.

7. Claims 54, 64, 66 and 69 are unpatentable over the German patent No. 192,467 in view of the Muller publication.

8. Claims 54, 64, 66 and 69 are not patentable in view of the German patents Nos. 192,467 and 192,468.

9. Claims 54, 71, 72 and 73 are directed to subject matter that was not disclosed in plaintiff's application as originally filed.

10. Plaintiff is not entitled to a patent containing any of Claims 54, 64, 66 or 69.

11. Plaintiff is not entitled to a patent containing any of Claims 54, 71, 72 or 73 based solely on the disclosure of the application in suit.

12. The complaint should be dismissed as to all of the claims in suit.

### Opinion.

I agree with the Board of Appeals of the Patent Office in holding that plaintiff's claims numbered 54, 64, 66 and 69 are unpatentable over the German patents, etc., introduced as references by the defendant. An attempt was made to show that the German patent was inoperative, but I was not satisfied that the model constructed and operated by the plaintiff was sufficient to show inoperativeness. The drawings filed with a patent are not working drawings nor drawn to scale, and a model constructed by an opponent might show a different result. At any rate, I do not think that the proof was sufficient to overcome the presumption in favor of the decision of the Board of Appeals.

I also agree with the Board of Appeals in holding that claims numbered 54, 71, 72 and 73 are directed to subject matter that was not disclosed in plaintiff's application as originally filed.

The complaint should be dismissed with costs.